GEORGE MAYBERRY et al. v. STATE.

No. A-9411. May 20, 1938.
(79 P. 2d 1027.)

Justin Hinshaw, of Norman, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for the State.

DOYLE, J. The plaintiffs in error were jointly charged, tried and convicted upon an information charging that in

Cleveland county, on the 26th day of May, 1937, they did then and there conjointly have in their possession a whisky still, with the unlawful intent to violate the prohibitory liquor laws of the state of Oklahoma. 37 Okla. St. Ann. § 1 et seq. The jury failed to fix the punishment. Motion to vacate and set aside the verdict and grant a new trial was duly filed, considered and overruled. Exceptions allowed.

The court sentenced George Mayberry to pay a fine of $75 and to imprisonment in the county jail for 45 days, and sentenced Dude Mayberry to pay a fine of $50 and to imprisonment in the county jail for 30 days.

C. I. Adams, Key Durkee, deputy sheriffs, and Hamilton Stufflebean, night jailor, testified that they went to the woodlands 13 miles northeast of Lexington, near the Davis schoolhouse, looking for a still, and about a quarter of a mile south and east from the home of the defendants they found a coal oil barrel used as a still and an iron worm, and they destroyed the barrel; that tracks led from the still to the highway, then down the section line highway, about 200 yards to the homes of the defendants, on each side of the highway. That under Dude Mayberry's house they found two oil pressure tank burners that could be used for working a still; that they could not testify whether or not the still was found on the premises of the defendants.

Key Durkee testified that tracks leading from the still went across an old field to the section line road and went down the road about 200 yards to where the defendants lived; that tracks left the road to George's house, and tracks turned to Dude's house across the road; that two burners were found under Dude's house. That they did not have a search warrant.

George Mayberry, as a witness in his own behalf, testified that he lived a quarter of a mile east of the Davis schoolhouse; that the officers came up the road that day, one went to his brother's house across the road, another turned into his house. The officer said he found a still over there, point-

ing to the top of a hill about a quarter east and nearly a quarter south of his house on Womack's place; that he had never seen a still or a part of a still at that place, and did not know what the officers found was there, did not know who put it there. The officers asked him: "Have you been making whisky over there?" and he answered, "I have not." That he was never before arrested but one time, that was 10 years before, and that time he entered a plea of guilty to a violation of the prohibitory law.

Dude Mayberry, as a witness in his own behalf, testified that his house was across the highway from his brother George's house, that he was not at home the day the officers were there; that he had been living on the place about six months and the two burners that the officers found under the house were there when he moved there. That the place where the officers found the still was Womack's; that he had never seen a still there, had nothing to do with it, knew nothing about it, and had never been arrested before in his life.

Jess Rollins testified that he had lived in that community 34 years, knew the defendants, George and Dude Mayberry, all their lives, and knew their general reputation in that community as to being peaceable law abiding citizens, and that reputation was always good.

Albert Love testified that he lived at the Davis schoolhouse, knew the defendants for the past five years and knew their general reputation in the community as to being peaceable law abiding citizens, and that reputation was good.

Reed Blancett testified that he lived east of the Davis schoolhouse, had known these boys all their lives, and knew their general reputation as to being peaceable and law abiding citizens, and it was good.

In rebuttal the state recalled Key Durkee. Asked if he knew the general reputation of the defendants as to being peaceable law abiding citizens answered:

"We have had lots of complaints. By the Court: Objection sustained. Just answer 'yes' or 'no'. Answered: Yes, and it was bad."

C. I. Adams, recalled in rebuttal, testified that he had known the boys for 15 or 20 years, knew their reputation in the community as to being peaceable law abiding citizens. Asked: "Is that reputation good or bad." Answered: "It is bad. They make whisky." Motion to strike the last remark sustained.

The main question presented is whether the evidence is sufficient to sustain the verdict.

Our examination of the record convinces us that the evidence was not sufficient to sustain the verdict.

The state failed to prove that the place where the still was found was in the possession or under the control of the defendants, or that the still was their property, or that they ever had possession of the same. It was not disputed that the still was found on the Womack place.

The state relied on circumstantial evidence for a conviction.

It appears from the record that the court failed to instruct on the law applicable to circumstantial evidence, and this fact probably accounts for the verdict rendered.

The authorities all hold, and without dissent, that where circumstantial evidence is relied upon for conviction this necessitates the trial court, when requested, to give the law applicable thereto in its instructions to the jury.

While it does not appear that such an instruction was requested, nevertheless, the defendants were entitled to have the case submitted to the jury on instructions fairly applicable to the evidence in the case. And where the evidence is so weak and unsatisfactory, as in this case, the record should be free from prejudicial error to avoid a reversal of the conviction.

302

The rule as stated in 12 Cyc. 633, is:

"Where the prosecution relies solely upon circumstantial evidence, the court must always instruct upon the nature of circumstantial evidence. Such evidence should be expressly defined, and the rule governing its effect concisely stated."

In cases of circumstantial evidence it is necessary that all the facts and circumstances essential to a conviction be proved beyond a reasonable doubt.

Where the evidence is wholly circumstantial and the facts and circumstances in evidence are of such a character as to fairly permit an inference consistent with innocence, it cannot be regarded as evidence sufficient to support a conviction. Adams v. State, 38 Okla. Cr. 173, 259 P. 665.

Under this rule the evidence tending to connect these defendants with the offense charged is wholly insufficient to support the verdict, and for this reason the judgments herein appealed from are reversed.

DAVENPORT, P. J., and BAREFOOT, J., concur.